THE STATE, THOMAS N. McCARTER, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEW-ARK ET AL., DEFENDANTS.

1. Commissioners were appointed under section 2 of the supplement to the charter of the city of Newark (*Pamph. L.* 1875, *p.* 249), to make an assessment upon the owners of lands peculiarly benefited by the widening of Belleville avenue, in that city. Upon the coming in of their report, objections were filed by the prosecutor and others to its confirmation. The report was confirmed, except as to the objectors. Afterwards new commissioners were appointed, by whom an assessment for said benefits was made upon all of said landowners who had

not made payment upon the basis of the first assessment. To the confirmation of this report the prosecutor objected. The report was confirmed by the Circuit Court.—*Held*,

1. That the procedure in the Circuit Court was authorized by the laws regulating assessments as applicable to the city of Newark.

2. That the Circuit Court was not divested of its power to confirm a report which should be final and conclusive by reason of the confirmation by it of a prior report as to those only who did not object.

2. Application made of "A general act respecting taxes, assessments and water rates." *Pamph. L.* 1881, *p.* 194.

On *certiorari* to the Circuit Court of Essex county, where the following opinion was filed by Judge Depue :

This case was argued some time ago, and mainly on a question of law, but also on a question as to the amount of the assessment. I have held the papers, not on the first point, because I had no difficulty about that whatever, but because I thought that the assessment was excessive; and the papers that enabled me to consider that matter only came to my hands recently.

The question of law that was argued, was with regard to the power of the Circuit Court to set aside an assessment made with respect to those of the property owners who objected to confirming the assessment with respect to other persons who made no objection. It was contended before the court that, when the first assessment came in, it was the duty of the court to dispose of it, and having made a disposition of it the jurisdiction of the court was ended. In other words, if one man objects to an assessment made on his property, and the objection turns out well founded, and the other ninety-nine are satisfied with the assessment and are anxious to pay it, for the purpose of discharging their property, the matter must be delayed until that litigation is over, or else, if confirmed as to the ninety-nine who want it confirmed to relieve their property, the objecting person will be discharged from liability to assessment in this matter in the Circuit Court, the only place in which it can be done.

The contention is contrary to the practice of the Supreme Court on the hearing of writs of *certiorari*, and it is contrary to the practice and the construction that has been put on the act on which assessments are made in the Circuit Court. The Supreme Court on *certiorari*, and the Circuit Court in the matter of general assessments, have always regarded the assessment against the individual, standing by itself, as an assessment in its totality, so far as regarded that particular individual. Any other consideration would be not only contrary to the universal practice, but it would lead to great confusion and embarrassment in the execution of this law. I could stand on the uniform practice and on the obvious construction that has been placed on this act and kindred acts on the same subject, but if there were any doubt whatever left on the subject, the general act representing taxes and assessments and water rates, approved March 23d, 1881, and found in the *Revision*, § 487, makes the question entirely clear. It provides that "No assessment or water rate imposed or levied in this state shall be set aside or reversed in any court of law or equity in any action, suit or proceeding for any irregularity or defect in form, or illegality in assessing, laying or levying any such tax, assessment or rate, or in the proceeding for collecting the same, if the person against whom, or the property upon which, such tax, assessment or rate is assessed or laid is in fact liable to taxation or assessment, or imposition of such water rate, in respect of the purpose for which such tax, assessment or rate is levied, assessed or laid ; and the court in which any action, suit or proceeding is or shall be pending to review any such tax, assessment or water rate, is required to amend all irregularities, or errors or defects, and is empowered, if need be, to determine for what sum such person or property was legally liable to taxation or assessment, or water rate, and by order or decree to fix the amount thereof; and the sum so fixed shall be the amount of tax, assessment or water rate for which such person or property shall be liable, and the same shall be and remain a first lien or charge upon the property and persons, and collectible in the manner pro-

vided by law, the same as if such tax, assessment or water rate had been legally levied, assessed or imposed in the first instance by the city, town, township, commission, board or other authority attempting to make, impose or levy the same; it shall be the duty of the court to make a proper levy, imposition or assessment in all cases in which there may lawfully be an assessment, imposition or levy," &c.

Now, the courts of this state, among them the Court of Errors and Appeals, have settled these principles: First, that the liability to assessment commences with the execution of the improvement, and that, although there be no law in force at that time under which the assessment may lawfully be made, yet if in the future the legislature provides for a legal method of making an assessment and appraisement of the benefits, the property will be liable to that assessment—on the theory that the liability to assessment springs from the execution of the improvement. So that in this case the property in controversy is property, within the meaning of this statute, that is in fact liable to the taxation or assessment in respect to the purposes for which such tax, assessment or rate is levied or assessed.

Another principle has been adjusted, and that is in the interest of those who are desirous to discharge their property from the lien of assessments, and that is, that where an assessment has been paid, although it has been laid under an unconstitutional law, the assessment will stand until it is set aside by some judicial proceeding, and in the meantime the property on which the assessment is laid will not be liable to any re-assessment; and the practice of the court, in dealing with questions of that character, has been to refuse to make an order setting aside the assessment, wherever it appears from the evidence that the assessment has in fact been paid, otherwise the greatest confusion and uncertainty with respect to the liens on those improvements should exist. Inconvenient as the laws are now, the inconvenience would be increased to such an extent as to be very embarrassing.

I have no doubt of the power of the Circuit Court, either under the act authorizing the appointment of commissioners or under the act of 1881, to deal with each of these assessments considered by itself, and, where an assessment comes in, to approve such as are satisfactory to the owners of land, and to direct a re-assessment with regard to others where it is found that the original assessment cannot be maintained.

The other question was with regard to the amount of this assessment. It seemed to be very large, but, on looking at the case in the light of the rule that governs the judgment of the court in setting aside these assessments—that is, to determine whether the commissioners have violated any rule of law—I think the case is not such a one as that I ought to interfere with the judgment of the commissioners. The improvement was made a long while ago, and really, although I have had this case before me, and have endeavored to get all the information about it that I possibly could, I have been unable to ascertain how long ago the assessment was made; but it appears from the papers submitted to me that three different assessments have been made for this improvement, and that at least six different commissions have expressed a judgment with regard to the amount of benefit derived from these parcels of land. They have agreed, except that, taking into consideration the interest that has accrued, the last award is less than the first. In addition to that, nearly all the assessments made by those commissioners have been paid by the other landowners. Under these circumstances, the court could not set aside the report on account of its disagreement with the judgment of the commissioners. I am only authorized to review that with a view of finding out whether they have either mistaken the law or misapplied it.

Argued at November Term, 1889, before Justices VAN SYCKEL, MAGIE and GARRISON.

For the prosecutor, *McCarter, Williamson & McCarter*.

For the defendants, *Joseph Coult*.

The opinion of the court was delivered by

GARRISON, J.   The facts of this case, briefly stated, are these :   Upon the application of the city of Newark, three commissioners were appointed by the Circuit Court to make an assessment upon the owners of all the real estate peculiarly benefited by the widening of Belleville avenue, in that city. Upon the coming in of the report of these commissioners, objections were filed by the prosecutor and others to its confirmation.   The Circuit Court ordered that the report be confirmed, except as to said objectors.   Afterwards new commissioners were appointed, by whom an assessment for said benefits was made upon all of the said landowners who had not made payment upon the basis of the first assessment.   To the confirmation of this report the prosecutor, who was included in it, likewise objected.   The report was confirmed by the court for the reasons stated in the opinion, which is given herewith.  · The prosecutor thereupon brought his writ of *certiorari*.   It is this last assessment and order of confirmation that are now the subject of review.

The opposition of the prosecutor, in so far as it rests in matter of law, resolves itself into the contention, that the Circuit Court was without authority to appoint the second set of commissioners, and without jurisdiction to confirm their report.   This contention is based upon the second section of the supplement to the charter of the city of Newark (*Pamph. L.* 1875, *p.* 249), which is as follows :

" 2. *And be it enacted*, That all commissioners to estimate and assess damages or benefits in said city, shall make a report of their assessments to the said court, and upon the coming in of any such report, signed by the said commissioners, or any two of them, the said court shall cause such notice to be given as it shall direct, of the time and place of hearing any objection that may be made to such assessment, and after hearing any matter which may be alleged against the same, the said court shall by rule of order either confirm the said report, or refer the same to the same commissioners for revision and correction, or to new commissioners to be

.appointed by the said court, to reconsider the subject matter thereof; and the said commissioners to whom the said report .shall be so referred, shall return the same report corrected and revised, or a new report to be made by them in the premises to the said court, without unnecessary delay; and the same, on being so returned, shall be confirmed or again referred by the said court in manner aforesaid, as right and justice shall require, and so, from time to time, until a report shall be made or returned in the premises which the said court shall confirm, and such report, when so confirmed by said court, shall be final and conclusive, as well upon the said city as upon the owners of any land and real estate affected thereby; and the said court shall thereupon cause a certified copy of said report to be transmitted to the city clerk, with a certified copy of the rule of said court confirming said report, and the common council shall thereupon order the said assessment to be collected as authorized by law."

The construction given by the prosecutor to the language here employed is, that the Circuit Court is clothed by the legislature with authority to order as many amended reports of assessments as may be deemed necessary, but that jurisdiction is thereby conferred to confirm but one report. Starting with this premise, he logically contends that the power to confirm a report is, under the statute, a power which can be exercised by the court but once, and that, after a single exercise of this power, all subsequent attempts at confirmation are mere nullities. The application of this interpretation to the prosecutor's case is obvious; the Circuit Court, he argues, by its confirmation of the first report as to those who did not object to the assessment it imposed upon them, has stripped itself of jurisdiction to confirm a later report assessing those who, because of their objection to the first report, were excepted from its operation.

The grave embarrassments to landowners and to city authorities which would result from such a rule of law, are cogently presented in the opinion of the Circuit Court, to-

gether with the authority upon which that court relied for the course of procedure followed by it.

It would serve no useful purpose, in the decision of the case before us, to enter into an extended discussion of the relative merits of the two constructions contended for, for the reason that, granting to the prosecutor his main premises, the statute in question admits of no such construction as that which he seeks to apply in the present case. The proposition, stripped of all paraphrase, is, that the act in question confers upon the Circuit Court jurisdiction to confirm but one report; that if two reports are confirmed, one only is valid under the power conferred by the statute, the other being utterly void. From these premises it is assumed, that the first exercise by the Circuit Court of the power of confirmation will necessarily be the one possessed of efficacy, and that thenceforth the power to confirm is exhausted. An examination of the act itself, however, places it beyond all doubt that, admitting the indivisibility of the power of confirmation, the result reached is fatal to the prosecutor's contention. The act, in the clearest terms, authorizes the court, upon the first coming in of a report, either to confirm it, or to refer it to the same commissioners or to new ones, and, upon its second return, again to refer it, "and so on, from time to time, until a report shall be returned which the said court shall confirm, and *such* report, when so confirmed, shall be final and conclusive." From this language it appears to me to be plain beyond discussion that, if the power to confirm a report which shall be final and conclusive is a power which can be exercised by the court but once, the period at which jurisdiction vests for the exercise of that power is after the final return of the commissioners, and not at any earlier period. Under the construction contended for, by which the court is empowered to make a single order of confirmation, which, when made, is to possess the attribute of finality, each successive order of reference is a distinct postponement of the jurisdiction to confirm.

In a case, therefore, which presents the feature of two exercises of this power, one before the final report of the com-

missioners and the other after its return, the last alone would be possessed of efficacy, the prior or partial confirmation being *coram non judice.* From this it follows, that the report and the order of confirmation, which the prosecutor is now seeking to avoid, are, upon his own interpretation of the meaning of this act, the only one which the court, at any time, had jurisdiction to make. With the earlier report we have nothing to do, as the prosecutor was not affected by it, and as all the persons included in it have either paid their assessments or have been re-assessed under the report which the court, in any aspect of the law, had the power to confirm as final and conclusive.

It must not be understood that, in granting the premises necessary to a discussion of the position assumed by the prosecutor of this writ, we intend to express any doubts as to the soundness of the construction of the laws relative to assessments of benefits adopted by the court below, with whose conclusions upon the following points we are in full accord :

1. That the procedure in the Circuit Court was, for the reasons there given, authorized by laws regulating assessments and applicable to the city of Newark.

2. That the Circuit Court was not divested of its power to confirm a report which should be final and conclusive by reason of the confirmation by it of a prior report except as to those who objected to it.

3. That the assessment imposed was correct in amount and in mode of ascertainment.

It may be well to add that, even if the court entertained different views as to the validity of the proceedings below, it would, under the act of 1881 (*Pamph. L., p.* 194), be required to determine for what sum the property in question was legally liable, and to fix the sum so determined as the assessment to be charged upon the prosecutor's lands, in which event the almost uniform results reached by repeated re-assessments, made by impartial tribunals, would, in the absence of any controlling allegations to the contrary, furnish

:a most obvious criterion for the *quantum* of such benefits. *Sandford* v. *Township of Kearny*, 18 *Atl. Rep.* 349.

The order of the Circuit Court is affirmed, with costs.